AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)   ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

United States of America

v.

COLE MATTHEW HARRIS,
ROBERT DOUGLAS SPIRO, JR.,
CINDY CHEN, and
YAO LU,

Defendants

```
FILED
CLERK, U.S. DISTRICT COURT
February 6, 2023
CENTRAL DISTRICT OF CALIFORNIA
BY:  MR  DEPUTY
```

Case No.  2:23-mj-00545-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

Beginning on an unknown date and continuing until at least February 2021, in the county of Los Angeles in the Central District of California, the defendants violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 371, 1001 | Conspiracy to make false statements to a government agency |

This criminal complaint is based on these facts: *Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
Complainant's signature

Billie Bender, Special Agent
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: February 4, 2023

Judge's signature

City and state: Los Angeles, CA   Hon. Pedro V. Castillo, U.S. Magistrate Judge
Printed name and title

AUSAs: MiRi Song (x2262) and Skyler F. Cho (x2475)

**AFFIDAVIT**

I, Billie J. Bender, being duly sworn, declare and state as follows:

**PURPOSE OF AFFIDAVIT**

1. This affidavit is made in support of (1) a criminal complaint against Cole Matthew Harris ("HARRIS"); Robert Douglas Spiro Jr. ("SPIRO"); Cindy Chen ("CHEN"), also known as "Chen Ying" and "Meila Chen"; and Yao Lu ("LU") and (2) arrest warrants against HARRIS, CHEN, and LU for conspiracies to make false statements to a government agency, in violation of Title 18, United States Code, Sections 371, 1001.[1]

2. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrants, and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and

---

[1] On February 2, 2023, I learned that, earlier that day, SPIRO purchased a ticket to fly from Los Angeles, California, to Dubai on the following day. I suspected that SPIRO might be attempting to flee from prosecution because: (1) based on my knowledge of this investigation, I knew that SPIRO was aware that his conduct was being investigated by the Federal Bureau of Investigation; and (2) SPIRO purchased his ticket the day before his flight was scheduled to depart. On February 3, 2023, investigators executed a probable cause arrest of SPIRO at Los Angeles International Airport. Accordingly, because SPIRO is in custody, I seek arrest warrants only against HARRIS, CHEN, and LU.

1

statements described in this affidavit are related in substance and part only.

## BACKGROUND OF BILLIE J. BENDER

3. I am a Special Agent for the Federal Bureau of Investigation ("FBI") and have been so employed since January 2015. As such, I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7). I am therefore empowered to conduct investigations of, and to make arrests and serve warrants for, offenses enumerated in 18 U.S.C. §§ 2516, 3052 and 3107.

4. I have received training at the FBI Academy in Quantico, Virginia and have gained experience on the field. As a result, I am familiar with financial investigations, surveillance, interviewing, and other investigative techniques. My training and experience, as well as conversations I have had with other agents and law enforcement officers who specialize in fraud and money laundering investigations, have familiarized me with the many methods of operation that money launderers and fraudsters employ.

5. I am currently assigned to a squad that investigates money laundering and fraud, amongst other federal crimes. Previously, I served as an FBI Special Agent investigating large-scale narcotics trafficking and international money laundering. In my experience, I have conducted investigations using wiretaps, confidential sources, and sophisticated undercover platforms. Additionally, I have participated in

numerous search warrants of physical premises, emails, cloud-based storage systems, and electronic devices. Prior to becoming a Special Agent, I was an Intelligence Analyst assisting the FBI on fraud against the government and public corruption investigations in New York City from 2012 to 2015.

## SUMMARY OF PROBABLE CAUSE

6. Beginning on an unknown date and continuing until at least February 2021, there were agreements between HARRIS, SPIRO, and LU and again among HARRIS, SPIRO, LU, and CHEN to make false statements to the Small Business Administration ("SBA")[2] regarding Deja LLC ("Deja") and Emergency Response Nursing ("ERN"). HARRIS, SPIRO, and LU and HARRIS, SPIRO, CHEN, and LU became members of conspiracies involving Deja and ERN, respectively, knowing of at least one of the objects -- namely, fraudulently obtaining Paycheck Protection Program ("PPP") loans backed by the SBA -- and intending to help accomplish it. The conspiracies involving Deja and ERN were operated and carried out, in substance, in the following manner: (1) one or more co-conspirators would willfully and deliberately apply for a PPP loan, with knowledge that the application contained untrue statements and that such conduct was unlawful; and (2) one or more co-conspirators would prepare writings containing false

---

[2] The SBA's website describes the Paycheck Protection Program as "[a]n SBA-backed loan that helps businesses keep their workforce employed during the COVID-19 crisis." See "Paycheck Protection Program," available at https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program (last accessed February 3, 2023). Accordingly, I believe that the Deja and ERN PPP loans were matters within the jurisdiction of the SBA.

statements to be submitted as part of the application for PPP loans.

## STATEMENT OF PROBABLE CAUSE

7. Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

**A. The Deja Application**

8. Records from Sunwest Bank reflect that, on or about April 28, 2020, a PPP Borrower Application Form -- namely, SBA Form 2483 -- for Deja (the "Deja Application") was submitted through Sunwest Bank, an authorized lender. The Deja Application reflected that: (1) HARRIS electronically signed the Deja Application; (2) HARRIS was the "managing member" and "100 percent owner" of Deja; (3) Deja had 306 employees; and (4) Deja had an average monthly payroll cost of $1,041,737.

9. I have reviewed the subsequent PPP loan agreement between Sunwest Bank and Deja, which states in pertinent part: "the Borrower will provide to the Lender documentation verifying the number of full-time equivalent employees on the Borrower's payroll as well as the dollar amounts of payroll costs[.]" I have also reviewed five IRS Form 941s (Employer Quarterly Tax Returns) that were submitted with the Deja Application, and they reflected that: (1) Deja had between 302 employees and 400 employees between April 2019 and September 2020; and (2) Deja paid quarterly "wages, tips, and other compensation" between $2,539,696 and $3,197,387 during this time period.

4

10. However, records from the California Franchise Tax Board show that Deja reported paying zero dollars ($0) in salaries and wages, and zero dollars ($0) in taxable income for both 2019 and 2020. Records from the California Franchise Tax Board also reflect that: (1) HARRIS was listed as the "sole owner" of Deja; and (2) HARRIS signed the 2019 CA Limited Liability Company Tax Form 568 on October 3, 2021, indicating the tax form was completed accurately.

11. Accordingly, based on my knowledge of this investigation, I believe that: (1) Deja was a shell company without active business operations; and (2) HARRIS or a co-conspirator willfully and deliberately submitted the Deja Application, with knowledge both that the Deja Application contained untrue statements -- including false statements about the number of Deja employees and the amount of Deja's average monthly payroll -- and that his or her conduct was unlawful.

12. Records from Sunwest Bank show that Sunwest Bank obtained an SBA-secured loan of $2,604,300 on behalf of Deja, which was approved on or about April 30, 2020, and deposited into a Sunwest Bank account controlled by HARRIS on or about May 12, 2020.

    B.    **Communications Between Co-Conspirators Around the Time of the Deja Application**

13. In the course of this investigation, investigators obtained multiple federal search warrants and seized communications between HARRIS and SPIRO. I have reviewed these communications, including the following messages that were sent

5

at or near the date that the Deja Application was submitted and the PPP loan was received:[3]

  a. On April 24, 2020, SPIRO sent HARRIS a message via WeChat, a messaging application, which stated: "Right now $5m for our friends & 2m for your loan ... Let's talk tomorrow. We could easily do like $20mm . . . We have it all down. Full process. You should listen in. You'll be on the ground."

  b. On April 29, 2020, SPIRO sent HARRIS a message via WeChat: "I just need 2 ID's & Socials. I am so upset. We got you $2.6 mm & Bompton fucked us for $7mm[.]" HARRIS responded, "That's Yao Fucking guy." SPIRO stated: "I'm beyond myself. We have $7mm free money teed up. How do you fuck that up. If you get me 2 names I can get $4-5mm done tomorrow. I'm sending the 3 others to other banks tomorrow."

  c. On or about May 8, 2020, HARRIS sent a screenshot of an email to SPIRO using the WhatsApp messaging application. The email subject was "Deja LLC," the sender's email address was "mrcoleharris@gmail.com," and the recipient was "▓▓▓▓▓▓▓@sunwest.com." The email stated, in part: "Thank you for all your help getting this approved. Yao asked me to send you more information on Deja, LLC." SPIRO later replied: "Perfect" and "I'm worried we're going to loose [sic] the other ones if we don't find him." Later, on the same day, SPIRO

---

[3] Some of the communications discussed in this affidavit were seized from a cellular telephone belonging to SPIRO that was seized during the execution of a federal search warrant. After seizing SPIRO's cellular telephone, investigators asked SPIRO whether he wanted any contact information from his phone, and SPIRO voluntarily provided his passcode.

stated: "He wants me to bring payment for all three loans & I can't tell him Yao is MIA," and "But we have NO way to access the other ones without Yao."

  d. Based on my knowledge of this investigation, I believe that: (1) "Yao" is a reference to LU; and (2) these communications show that HARRIS conspired with SPIRO and LU to make false statements in the Deja Application.

 **C. The ERN Application**

 14. I have reviewed additional records from Sunwest Bank that show that on or about February 2, 2021, Jie Lin ("Lin")[4] electronically signed an application for a PPP loan for ERN (the "ERN Application") in the amount of $1,150,822 from Sunwest Bank. Although the ERN Application reflects that it was electronically signed by Lin, records from Charter Communications reflect that the IP address used to submit the ERN Application -- namely, IP address 23.243.250.169 -- was subscribed to HARRIS, with email addresses charris2766@roadrunner.com and mrcoleharris@gmail.com, and with a service address that I believe is the residence of HARRIS and CHEN based on, among other things, physical surveillance and driver license records for HARRIS and CHEN from the California Department of Motor Vehicles.

---

[4] In July 2021, Lin and others were indicted in the Southern District of New York with conspiracy to commit money laundering in a separate investigation.

15. The ERN Application claimed that: (1) ERN had 139 employees and (2) ERN's primary business address was 1055 Colorado Blvd., Ste 500, Pasadena, California.

16. I have reviewed four IRS Form 941s (Employer Quarterly Federal Tax Returns), which purportedly reflected the full year of 2019. These forms were submitted with the ERN Application, and they reflected that: (1) ERN had between 137 and 145 employees in 2019; and (2) ERN paid approximately $4,727,084 in "wages, tips, or other compensation" to these employees in 2019. However, records from the California Franchise Tax Board reflect that ERN did not report any payroll taxes or file any business license or registration forms since at least January 2019.

17. Furthermore, the four Employer's Quarterly Federal Tax Returns reflected that the address for ERN was 1968 S. Coast Hwy, Ste. 2398, Laguna Beach, California. However, a Google.com search showed that this address was the location of a "virtual mailbox" service used for collecting mail for entities.

18. Accordingly, based on my knowledge of this investigation, I believe that: (1) ERN was a shell company without active business operations; and (2) HARRIS, CHEN or a co-conspirator willfully and deliberately submitted the ERN Application from the residence of HARRIS and CHEN, with knowledge that the ERN Application contained untrue statements -- including false statements about the number of ERN employees and the amount of ERN's average monthly payroll -- and that such conduct was unlawful.

19. The records from Sunwest Bank show that, Sunwest Bank obtained an SBA-secured loan of $1,150,822 on behalf of ERN, which was deposited into a Sunwest Bank account purportedly controlled by Lin.

20. Because I believe that both Deja and ERN were shell companies without active business operations, I believe that the false statements in the Deja Application and the ERN Application were material to the activities and decisions of the SBA; they had a natural tendency to influence, or were capable of influencing, the agency's decisions or activities.

### D. Communications Between Co-Conspirators Around the Time of the ERN Application

21. As discussed above, in the course of this investigation, investigators obtained multiple federal search warrants and seized communications.[5] I have reviewed these communications, which include the following:

   a. On or about July 31, 2020, LU sent SPIRO a PDF using WeChat titled

---

[5] Based on reports and information from other investigators, I am aware that, in October 2022, during the execution of one of the federal search warrants, investigators seized, among other things, a cellular telephone belonging to CHEN ("CHEN's Telephone"). An investigator saw that CHEN's Telephone had an icon for WeChat. An investigator placed CHEN's Telephone on a table along with other evidence for processing. An investigator told CHEN that CHEN's Telephone was being seized. CHEN later surreptitiously took CHEN's Telephone from that table and drove away. Once investigators realized that CHEN had departed with CHEN's Telephone, an investigator went to a nearby school, found CHEN in her car, and retrieved CHEN's Telephone from her. During a later search of CHEN's Telephone, an investigator saw that the WeChat icon was no longer visible. Accordingly, I believe that CHEN attempted to delete the WeChat application, and CHEN's attempt removed the icon from CHEN's Telephone but did not successfully uninstall the application.

"Citi_Small_Business_Loan_Application_2483_Doc.pdf." The document is a PPP loan application for ERN that lists "Jie Lin" as the Chief Executive Officer and signatory. Based on my knowledge of this investigation, I believe that this communication shows LU and SPIRO's involvement in making false statements to the SBA about ERN.

      b. On or about September 25, 2020, SPIRO and HARRIS communicated over WhatsApp. In their WhatsApp conversation on September 25, 2020, HARRIS texted "Yao [LU] not answering," to which SPIRO replied "WTF? Which is that for? He said he's been checking every day." HARRIS then went on to text "Bro. Check WeChat group text. He answered there." "So they need tax return, bank statements, and a voided check." HARRIS then messaged SPIRO a picture of an email addressed to linjie66688@yahoo.com from a representative of Lendio (another SBA approved PPP lender). In the picture, a representative from Lendio wrote to the user of the linjie66688@yahoo.com email account that the additional PPP requirements included 2019 business tax returns, a "voided check," and January 2020 and February 2020 bank statements.

      c. Also, on or about September 25, 2020, in a WeChat group chat that included HARRIS, SPIRO, LU and CHEN, CHEN wrote: "Yao, which email did you use for er nursing?" In the same group chat, LU wrote: "They need tax returns, bank statements, and a voided check" and "Should I reply with email or text[.]" CHEN responded: "Can u make them and send to her?" That same day, in the same WeChat group chat, LU asked the group to send

10

bank statements to the email account "linjie66688@yahoo.com."[6] CHEN wrote: "You have the tax return right?" LU responded: "We have the voided check, need to make the rest." CHEN responded, "So tax returns and bank statements[?]" LU responded, "Yes". Based on my training and experience relating to COVID-19 relief fraud schemes, I believe that these communications show that CHEN asked LU to make fake tax returns, bank statements, and/or a voided check for ERN for the purpose of making false statements to the SBA.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

---

[6] A signature card for a Sunwest Bank business checking account ending in -8442 reflects that Lin was the signatory on the account and his email was "linjie66688@yahoo.com."

11

## CONCLUSION

22. For all of the reasons described above, there is probable cause to believe that HARRIS, SPIRO, CHEN, and LU have committed violations of Title 18, United States Code, Sections 371, 1001 (conspiracies to make false statement to government agency).

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 4th day of
February, 2023.

_____
THE HONORABLE PEDRO V. CASTILLO
UNITED STATES MAGISTRATE JUDGE